LEANDER HUTCHINS AND OTHERS *v.* GEORGE W. MOODY.

*Evidence. Taxes.*

Where a collector levied a tax on the land of H., prior to 1855, without levying on his body, (the law then in force requiring the collector to levy on the body before resorting to a sale of the land,) and testified in justification of the levy that H., prior thereto, had left the state with the apparent purpose of remaining abroad permanently, and that the collector made diligent inquiry and could not find that he had ever returned to Vermont, before he resorted to a levy on the land, it was *held,* that to rebut this proof evidence was admissible to show that the collector was informed and knew that H. lived in the state when he levied on the land, the question being whether the collector might with due diligence have arrested H. for the taxes.

THIS is an action of covenant broken. Plea, that the defendant has kept and performed his covenant. Trial by jury and verdict for the plaintiffs, Washington county, March Term, 1864, PECK, J., presiding.

This case has been twice before the supreme court on former occasions, and the cases are reported in the 30 Vt. 655, and 34 Vt. 433, where the facts are fully stated. It appeared that Oramel Howe held the title and was in possession of the premises in question, in Waterbury, on the first of April, 1853, and soon after sold the same to Wm. W. Wells, who sold to the defendant, Moody, and Moody deeded to the plaintiffs; that certain state, town and school taxes were assessed against Howe on the land in question, as set in the list of 1853; that Isaac C. Brown was first constable of Waterbury in the years 1853–4–5, and the tax bills for said taxes were delivered to him for collection, with warrants in due form; that Howe

and his wife left said premises and went to Pennsylvania, in May, 1853, and remained there until some time in the month of January, 1854, when they returned and took up their residence in Berkshire, in this state, and there remained until April, 1856, and then went into the state of Minnesota ; that Howe left no personal property in Waterbury, and had none in the state, and was very poor.

Said Brown testified that after Howe left the state, he did not know of his having returned into this state until the time of the first trial in this suit ; that before he instituted proceedings against said premises for the collection of said taxes, he made diligent search for personal property belonging to Howe, but could find none ; that he made diligent inquiries after Howe himself, and up to the time of the first trial in this suit, he did not learn that Howe had returned to this state, but supposed that he had left and continued permanently out of the state. It appeared that after making said inquiries, and being satisfied that his only remedy for the collection of said taxes was by a sale of said land, Brown resorted to a sale of the land for this purpose.

The defendant offered to show that while Howe was in Berkshire, as above stated, and before and at the time Brown proceeded against the land, it was generally known in Waterbury that he resided there, and that Brown, who resided in Waterbury, also knew it, and was so told before leaving the proceedings in the town clerk's office, which was objected to by the plaintiffs, and excluded by the court,—to which the defendant excepted.

The only facts controverted before the jury was whether Brown might with due diligence have arrested Howe for the taxes, or collected them without resorting to the land, and this question was submitted to the jury, under instructions that if the jury found that he might, the plaintiffs could not recover.

The court further told the jury that if the officer knew while he had the rate-bills and warrants, before and at the time he proceeded against the land, that Howe lived in Berkshire, it would not prevent a recovery by the plaintiffs, but that if Howe was in Waterbury in 1854, and the officer by due diligence might have arrested him, or might have then collected the tax of him without proceeding against the land, the plaintiff could not recover.

Exceptions were also taken to the charge and ruling of the court in other respects, but not material to be stated.

*Dillingham & Durant*, for the defendant.

*O. H. Smith*, for the plaintiffs.

ALDIS, J.   In all the former trials and hearings of this case it has been held incumbent on the plaintiffs to show, that all the facts necessary to justify the collector in resorting to a sale of land for collection of the taxes existed, and all the statutory requisites to charge the land with the tax, have been complied with and observed by the officer in order to authorize the plaintiffs in paying the tax before sale.

The statute in force when these proceedings were had required the collector of taxes to levy the tax first upon the goods and chattels of the delinquent, and for want thereof to take his body and imprison him before resorting to a sale of his land.   This statute was altered in 1855 by authorizing a levy upon land before taking the body. But as these proceedings were under the old law it was the duty of the officer to take the body, if the tax-payer was resident in the state, before selling the land.

To justify this resort to a sale of the land the plaintiffs showed that Howe left the state in May, 1853, for Pennsylvania, with the apparent purpose of permanently residing abroad, and that the collector made diligent inquiry and could not find that he had ever returned to Vermont; that believing he was a non-resident he proceeded according to the statute to charge the land with the tax, and did such acts as, pursuant to the decision in this case in the 34th Vermont Reports, were requisite to charge the land.

It is admitted in the case that Howe did in fact return to live in Berkshire, in this state, in January, 1854, and lived there till 1856. That fact alone would not make the act of the collector in proceeding to sell the land illegal, provided he had made such inquiry and with such result as is above stated.   Hence the importance of proving that he had made diligent inquiry for Howe, and could not ascertain that he had returned to Vermont.

To rebut this proof the defendant offered to show that the collector was informed and in fact knew that Howe lived in Berkshire when he levied the tax on the land.

If this was true—then as the officer had the right to take Howe's body in Berkshire, (his authority for that purpose extending over the whole state,)—and as it was his duty to do so before levying on the land, the evidence should have been admitted. The charge of the court indicates that the court considered the authority of the constable in this respect was limited to his own town. But this was erroneous. See the former reports of this case in the 30th and 34th Vt. and the Comp. Stat. ch. 81, § 15.

It is claimed by the plaintiffs that the evidence was rejected upon the ground that it was offered out of time. This does not expressly so appear, and we are informed by the presiding judge who signed the bill of exceptions that this claim is mistaken.

In the exclusion of this evidence there was error. For this reason alone the judgment is reversed and the case remanded for a new trial.